VOLENTINE *v.* TERRELL.

5-227                                          262 S. W. 2d 905

Opinion delivered December 7, 1953.

Rehearing denied January 11, 1954.

*Ras Priest* and *Kaneaster Hodges,* for appellant.

*Pickens & Pickens,* for appellee.

GEORGE ROSE SMITH, J. This case arises from the dissolution of a partnership between M. O. Volentine and E. L. Terrell. In his complaint Volentine asserted that Terrell was indebted to him in the sum of $510.19 for money advanced to the firm by Volentine, and the prayer was for the foreclosure of a mortgage given by Terrell and his wife to secure such advances. Terrell denied the debt, and by counterclaim he sought to recover $1,687.50 as the balance due him from the partnership business. The chancellor sustained Volentine's claim to the extent of $499.30 and Terrell's counterclaim to the extent of $722.50, resulting in a judgment for Terrell for the dif-

ference of $223.20. Both parties appealed, but Terrell's abandonment of his cross-appeal leaves for our consideration only the three items as to which the chancellor found in Terrell's favor.

In April of 1949 Volentine, Terrell, and H. A. Tucker formed a partnership for the sole purpose of bidding for, and performing, a contract with the federal government for the clearance of about 2,200 acres of land in Pike County. To this venture Volentine contributed operating capital in cash, and Terrell and Tucker contributed machinery and other equipment. In substance the agreement was that when the work for the government had been completed and paid for, Volentine would be entitled to the return of his advances, Terrell and Tucker would be entitled to the return of their property, and any remaining profits would be divided.

The firm's bid for the job was accepted by the government, and work was begun. On June 13, 1949, Volentine and Terrell together bought Tucker's interest in the firm, and the next day these two formed a new partnership for the completion of the contract with the government. Shortly before that work was completed and paid for, Volentine and Terrell had a conference in the city of Glenwood and arrived at a partial settlement of the partnership affairs. Whether that settlement covered the three items now in dispute is the question presented by this appeal.

As to two of the items, totaling $310, the issue is solely one of credibility. Both parties testified that the Glenwood conference resulted in an agreement for the division of certain tangible assets then being used on the job. Volentine, who is corroborated by a bookkeeper whom he alone had the authority to employ and discharge, states that the settlement also included the two intangible items now in question—a claim for an insurance deposit and a claim upon certain promissory notes held by the partnership. Terrell denies that these claims were mentioned at the conference. The chancellor accepted Terrell's version of the matter, and we cannot say

that he was in error in doing so. To begin with, the trial court had the advantage of observing the witnesses as they testified. In addition, it is conceded that two other intangible assets—the firm's bank account and the final installment to be paid by the government—were not mentioned during the Glenwood discussion. The chancellor may reasonably have concluded that the settlement then reached was confined only to the physical properties which were being used by the partners in the immediate vicinity.

The third item in dispute, a $412.50 claim on Terrell's part, presents a question of law rather than one of credibility. In May of 1949, while the three-man partnership of Volentine, Terrell, and Tucker was still in existence, Terrell paid Tucker $825 for a half interest in three saws and a jeep owned by Tucker. When Volentine and Terrell bought out Tucker a month later they paid him for the other half interest in this property, which was included in the assets with which Volentine and Terrell began business. Two months later Terrell suggested that as a result of this transaction Volentine owed him $412.50 (half the amount that Terrell had paid to Tucker), but it is not contended that Volentine ever recognized the obligation. Volentine testified that Terrell relinquished this claim at the Glenwood conference, but Terrell says that the matter was not mentioned.

Even if Volentine's recollection of the Glenwood discussion is rejected, this issue is concluded by the terms of the written Volentine-Terrell partnership agreement, which provides that the partnership is to be "on a 50-50 basis as to assets and profits, except as to the amounts owing by the firm to M. O. Volentine." By entering into that agreement Terrell recognized Volentine's half interest in all assets of the firm, and there is nothing in the parties' later conduct that changes this ratio of ownership as to the property bought from Tucker. There is no proof that Terrell's later assertion of the present demand led to a modification of the contract. If Volentine is right in saying that Terrell gave up this claim at Glen-

wood, that ends the matter. And if Terrell is right in saying that this item was not referred to, then the written contract governs.

As to the first two items the decree is affirmed. As to the third the decree is reversed, and, since foreclosure is sought, the cause is remanded for further proceedings.